UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESSE A. PAYNE,

       Plaintiff,                      CIVIL ACTION NO. 16-cv-13165

       v.                                 DISTRICT JUDGE VICTORIA A. ROBERTS

COMMISSIONER OF                MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Jesse A. Payne seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 12) and Defendant's Motion for Summary Judgment (docket no. 15). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.     RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 12) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 15) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 3, 2011, alleging that he has been disabled since June 3, 2010, due to vasodepressor neurocardiogenic syncope.[1] (TR 106-12, 131, 135.) The Social Security Administration (SSA) denied Plaintiff's claims on March 21, 2011, and Plaintiff requested a *de novo* hearing. (TR 62-71, 77-78.) On February 13, 2012, Plaintiff appeared and testified at the hearing before Administrative Law Judge (ALJ) Paul W. Jones. (TR 24-61.) The ALJ then issued an unfavorable decision on Plaintiff's claims on March 13, 2012 (TR 11-20), and the Appeals Council declined to review the ALJ's decision (TR 1-3).

Plaintiff then commenced an action for judicial review, *Payne v. Comm'r of Soc. Sec.*, No. 13-cv-13561 (E.D. Mich. 2013), and the parties filed cross motions for summary judgment. On August 14, 2014, Magistrate Judge R. Steven Whalen issued a Report and Recommendation in the action, in which he recommended that Plaintiff's motion be denied and Defendant's motion be granted. (TR 391-408.) Plaintiff filed objections to the Report and Recommendation, and on September 30, 2014, District Judge Matthew F. Letiman entered an Order sustaining Plaintiff's objections, declining to adopt the Report and Recommendation, granting in part Plaintiff's motion for summary judgment, denying Defendant's motion for summary judgment, and remanding the case to the Commissioner for further proceedings. (TR 385-89.) Judge Leitman's Order stated, in relevant part:

> Based on the current record, it does not appear that the ALJ appropriately considered the objective medical evidence and Payne's testimony regarding his near syncopal episodes. Indeed, Payne testified that approximately two to four times per week he is incapacitated by an "excruciating" headache and has to lie down "for generally upwards of an hour." Moreover, Payne's medical records appear to corroborate the nature and frequency of these episodes. However, the

---

[1] Plaintiff also applied for supplemental security income, but he did not pursue that application. (*See* docket no. 15 at 6 n.2 (citing TR 113-17).)

2

> ALJ did not specifically address these near syncopal episodes in evaluating Payne's residual functional capacity.
>
> Based on the current record, therefore, it is not clear that the ALJ fulfilled his obligation to "consider all evidence in the record." . . . [I]n this case, Payne's near syncopal episodes were an essential component of his disability claim, and the ALJ's Decision does not reflect that the ALJ even implicitly took these episodes into account. The Court therefore remands this matter to the Commissioner for consideration of Payne's near syncopal episodes.

(TR 387-88 (citations omitted).)

On remand, Plaintiff appeared with a representative and testified at another hearing before ALJ Jones. (TR 285-320.) Then, on February 3, 2016, ALJ Jones issued another unfavorable decision with regard to Plaintiff's claims. (TR 269-80.) The Appeals Council declined to review the ALJ's decision (TR 262-68), and Plaintiff commenced the instant action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.[2]

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 12 at 6-21) and the ALJ (TR 275-78, 279-80) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony. Defendant adopts the ALJ's recitation of the facts. (Docket no. 15 at 7.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record. Therefore, in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

---

[2] Plaintiff's thirty-one-page brief in support of his Motion for Summary Judgment violates Eastern District of Michigan Local Rule 7.1(d)(3)'s limit of twenty-five pages. Any future non-conforming filings made by Plaintiff's counsel in matters before this Court will be stricken accordingly.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff did not engage in substantial gainful activity from the alleged onset date of June 3, 2010, through his date last insured of December 31, 2015, and that Plaintiff suffered from the severe impairment of ischemic heart disease. (TR 274.) Additionally, the ALJ found that Plaintiff's impairment did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 275.) The ALJ then found that Plaintiff had the following RFC:

> [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Claimant can lift/carry up to 20 pounds occasionally and 10 pounds frequently. He can stand/walk up to two hours and sit up to six hours of an eight-hour workday. He can only frequently be exposed to hazards.

(TR 275-78.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 279-80.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from the alleged onset date of June 3, 2010, through December 31, 2015, the date last insured. (TR 272, 280.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

5

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C. Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. §

405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because the ALJ failed to properly evaluate the medical opinion evidence and Plaintiff's credibility, and, therefore, the ALJ's RFC assessment is flawed. (Docket no. 12 at 24-36.)

1. *The ALJ's Assessment of the Medical Opinion Evidence*

The first argument in Plaintiff's brief is titled, "The ALJ Failed to Properly Evaluate the Medical Opinion Evidence." (Docket no. 12 at 24.) Plaintiff then devotes two pages of his brief to a description of the treating physician rule. (*Id*. at 24-26.) Surprisingly, however, the remainder of Plaintiff's argument in this regard does not comport with the title of the argument or the law advanced, as it neither discusses the opinion rendered by Plaintiff's treating neurologist, Edward C. Robles, M.D., nor challenges the ALJ's assessment thereof. Instead, Plaintiff argues that the ALJ's finding that Plaintiff's tilt table study was "normal" is contradicted by the medical evidence. (*Id*. at 26.) Plaintiff further argues that the ALJ's statement that "there are no diagnostic or radiographic tests to support [Plaintiff's] complaints" is therefore not supported by substantial evidence. (*Id*. (citing TR 278).)

Indeed, as Plaintiff points out, he underwent a head upright tilt table test on August 31, 2010, the results of which were described as "an abnormal head upright tilt table test with hypotension and bradycardia in stage 2 after nitroglycerin, and with near syncope, which imitates his prior symptoms. (TR 173-74.) As Plaintiff further points out, Dr. Robles characterized the results of Plaintiff's tilt table test as "abnormal" in several of his reports regarding Plaintiff's treatment. (TR 227, 229, 248, 250, 252.) The ALJ, however, summarized the results of

7

Plaintiff's tilt table test as follows: "His August 31, 2010, head upright title [sic] table test was *normal* [sic] with hypotension and bradycardia in stage two after nitroglycerin, and with near syncope, which imitated his prior symptoms." (TR 276 (emphasis added).)

Here, the ALJ essentially recited the results of Plaintiff's tilt table test verbatim, except he used the word "title" instead of "tilt," an obvious typographical error, and he stated the results as being "normal" instead of "abnormal." It is unclear why the ALJ made this latter error in reciting the test results; but the undersigned does not find it to be a fundamental mischaracterization of the evidence sufficient to warrant remand of this matter, particularly in light of the fact that (1) the ALJ also noted the abnormal results of the test, e.g., hypotension, bradycardia, and near syncope; and (2) despite noting the abnormal results of the tilt table test in several of his reports regarding Plaintiff's treatment, Dr. Robles did not assess any greater functional limitations to Plaintiff as a result of this test than the ALJ assessed in determining Plaintiff's RFC. Notably, Plaintiff fails to mention that on multiple occasions, Dr. Robles opined that Plaintiff was able to work, except he should not work around prisoners until his syncopal episodes improved. (*See* TR 629, 632, 636, 639-42, 646). The ALJ's RFC assessment is not inconsistent with Dr. Robles's opinion; in fact, it actually assesses greater functional limitations to Plaintiff than Dr. Robles did after considering Plaintiff's abnormal tilt test. Accordingly, Plaintiff's Motion should be denied with regard to this issue.

          2.     *The ALJ"s Assessment of Plaintiff's Credibility*

Next, Plaintiff argues that the ALJ failed to properly evaluate his credibility. (Docket no. 12 at 26-34.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But

credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.[3] "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p; *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

---

[3] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016. *See* SSR 16-3p, 2016 WL 1119029, at *1; 2016 WL 1237954. Nevertheless, because the ALJ's decision in this matter was rendered prior to the effective date of SSR 16-3p, the ALJ was obligated to comply with SSR 96-7p. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.")

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints in conjunction with the record evidence, and he found that Plaintiff's allegations were not entirely credible. (TR 278.) The ALJ explained this assessment as follows:

> Claimant indicated that he is primarily limited to due [sic] syncopal and near-syncopal episodes. He stated he experiences the near-syncopal episodes four to five times a month with more frequent episodes in the summer months. He will then get a headache and feel worn out. However, there are no diagnostic or radiographic tests to support his complaints. Despite alleging that he gets these near-syncopal episodes four to five times a month, in the last medical report from Dr. Robles, April 17, 2014, claimant said he had "a few episodes" since his last appointment six months before, that is, October 2013. Dr. Robles stated that claimant's syncopal episodes had improved as he had less near syncopal episodes. The doctor also said he had reached the limits of what he could do in terms of his near syncopal episodes.
>
> Although claimant testified that he continues to get the near syncopal [sic], the record does not contain any additional medical evidence since April 2014. Even though Dr. Robles stated he had reached the limits of what he could do, it does not appear claimant has presented to any other physician for treatment since April 2014.
>
> Again, the evidence does not fully support claimant's contentions as to the magnitude of his symptomatology and dysfunction, including his expressed level of fatigue, dizziness, and need to rest for extended intervals. Since the last hearing, claimant obtained his Associates Degree in business. He continues to drive with his unrestricted driver's license and it appears that he can perform daily activities such as cleaning and painting his son's bedroom.
>
> Through April 2014, Dr. Robles continued to indicate that claimant's work restrictions consisted of not working around prisoners. No other physician imposed a work preclusive limitation on claimant's functioning, or opined that he was disabled. Claimant's alleged impairments are not of a scale to reasonably conclude that he is prohibited from performing work activity within the confines of the residual functional capacity adopted.

(TR 278.)

Plaintiff raises a few specific issues with regard to the ALJ's credibility analysis. First, Plaintiff claims that the ALJ's reasoning that "there are no diagnostic or radiographic tests to support his complaints" is "simply untrue" because the near syncope episodes were confirmed

through the abnormal tilt table study. (Docket no. 12 at 29.) Plaintiff further argues that the existence of normal MRI results and normal neurological exams is medically and legally irrelevant with regard to whether Plaintiff actually suffers from headaches. (*Id.* at 29-30.) Plaintiff, however, seemingly misinterprets the ALJ's decision in this regard. In his credibility determination, the ALJ does not deny that Plaintiff actually suffers from near-syncopal episodes or headaches; rather, the ALJ discounts the credibility of Plaintiff's statements regarding the *intensity, persistence, and limiting effects* of his near-syncopal episodes and headaches. (TR 278 (emphasis added).) The reasoning statements made by the ALJ in furtherance of his credibility finding make this clear. For example, the ALJ reasoned that despite testifying that he had four-to-five near-syncopal episodes per month, Plaintiff told Dr. Robles that he only had a few episodes within a six-month period. (TR 278.) The ALJ also stated, "[a]gain, the evidence does not fully support claimant's contentions *as to the magnitude of his symptomatology and dysfunction*." (TR 278 (emphasis added).) Moreover, as Defendant points out, the Sixth Circuit has held that an ALJ's reliance on a lack of objective medical testing to discount the severity or existence of a claimant's allegedly disabling headaches is not erroneous. (*See* docket no. 15 at 11 (citing *Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) (citing *McCormick v. Sec'y of Health and Human Servs.*, 861 F.2d 998 (6th Cir. 1998))).)

Plaintiff also claims that in discounting Plaintiff's credibility, the ALJ relied too heavily on Plaintiff's ability to complete his Associate's Degree from a community college by taking classes online, the fact that Plaintiff continued to drive on an unrestricted license, and Plaintiff's ability to clean and paint his son's bedroom, because those activities are not indicative of an ability to work full-time. (Docket no. 12 at 31-32.) The ALJ, however, did not equate Plaintiff's ability to perform the aforementioned activities to an ability to complete a forty-hour workweek;

11

the ALJ expressed that Plaintiff's ability to perform those activities did not fully support Plaintiff's contentions regarding the magnitude of his symptomatology and dysfunction. (TR 278.) Indeed, the ALJ was required to consider Plaintiff's daily activities as part of his credibility determination. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p. Moreover, the ALJ did not rely solely on Plaintiff's ability to perform daily activities in determining that Plaintiff is not disabled or in finding that Plaintiff's allegations were not entirely credible. The ALJ relied on several items, such as the objective medical evidence, the medical opinion evidence, Plaintiff's daily activities, Plaintiff's treatment records, and the lack of treatment undergone by Plaintiff for his alleged disability in the two years prior to the decision. (TR 278.) Accordingly, the ALJ's consideration of Plaintiff's daily activities was not erroneous.

Plaintiff also argues that the ALJ erred because he failed to accord Plaintiff's strong work history in making his credibility determination. (Docket no. 12 at 32, 33.) To support this argument, Plaintiff cites to an Eighth Circuit case wherein the court pointed to the claimant's long work history as evidence entitling him to substantial credibility. (*See id.* at 32 (citing *Nunn v. Heckler*, 732 F.2d 645, 648 (8th Cir. 1984)).) Plaintiff also cites to other non-binding case law in this regard. (*Id.* at 32, 33.) Plaintiff, however, does not point to any binding Sixth Circuit precedent that suggests that a claimant with a strong work history is more credible than any other claimant. Although an ALJ may properly consider a claimant's proven motivation to work (or not work) when assessing credibility, it is but one factor to be considered, and "[i]t is well established that the ALJ is not required to discuss every factor or conduct a factor-by-factor analysis." *See e.g., Felisky*, 35 F.3d at 1041; *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases). It is true that the ALJ did not explicitly discuss Plaintiff's prior work history in evaluating his credibility. But as

Plaintiff points out, the ALJ acknowledged Plaintiff's strong work history at the administrative hearing. (Docket no. 12 at 32 (citing TR 304).) The ALJ also discussed Plaintiff's work history during his analysis at step four of the sequential evaluation process regarding whether Plaintiff has the capacity to perform relevant past work, and he was clearly aware that Plaintiff has a strong work record. (TR 278-79.) Accordingly, the ALJ's failure to discuss Plaintiff's work history in the context of his credibility determination does not constitute reversible error.

The immediate discussion demonstrates that the ALJ set forth numerous legitimate reasons for discrediting Plaintiff's hearing testimony and subjective complaints in his decision, many of which apply the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), and SSR 96-7p. Moreover, the ALJ supported his finding that the severity of Plaintiff's subjective complaints was not supported by the objective medical evidence by explicitly discussing and citing to examples of inconsistency between Plaintiff's complaints and the medical record. Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be disturbed. Plaintiff's Motion should therefore be denied in this regard.

### 3. *The ALJ's Assessment of Plaintiff's RFC*

Lastly, Plaintiff argues that the errors made by the ALJ in reciting the results of his tilt table test and assessing his credibility "cascaded into an equally flawed RFC determination." (Docket no. 12 at 34.) This argument fails because the ALJ did not commit the errors alleged by Plaintiff, as explained above. Here, the ALJ cured the deficiency of his March 13, 2012 decision by considering Plaintiff's near syncopal episodes. Then, in accordance with the regulations, the ALJ weighed the medical and non-medical evidence in conjunction with Plaintiff's subjective

complaints and developed an RFC based on the evidence that he found to be credible. The ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, and it should not be disturbed.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 12) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 15).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 16, 2017        s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 16, 2017        s/Leanne Hosking
                              Case Manager Generalist